Leon Greenberg, NSB 8094
Dana Sniegocki, NSB 11715
Leon Greenberg Professional Corporation
2965 South Jones Boulevard #E-4
Las Vegas, Nevada 89146
(702) 383-6085
(702) 385-1827(fax)
leongreenberg@overtimelaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

-----------------------------X

| | |
|---|---|
| ANITA SANHUEZA and WENDY GUZMAN, Individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| | **Case No.:** |
| | **COMPLAINT** |
| Plaintiffs, | ) |
| | **CLASS ACTION** |
| vs. | ) ) ) |
| LINCOLN TECHNICAL INSTITUTE, INC., EUPHORIA ACQUISITION, LLC, NEW ENGLAND INSTITUTE OF TECHNOLOGY AT PALM BEACH, INC., SHAUN E. MCALMONT, CESAR RIBIERO, and BRIAN K. MEYERS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

_____ X

        COMES NOW PLAINTIFFS, on behalf of themselves and all others similarly situated and on behalf of the general public, hereby allege:

### JURISDICTION AND VENUE

        1.    This Court has jurisdiction over the claims alleged herein because Plaintiffs seeks relief pursuant to the Fair Labor Standards Act ("FLSA") for the Defendants' failure to pay minimum wages and/or overtime wages as required by 29 U.S.C. § 201-218 et. seq.  The

1

employment relationship alleged to exist between the parties is subject to the FLSA because the defendants are properly deemed "employers" within the meaning of the FLSA as they have in excess of $500,000 in yearly revenue and the employment alleged involved the use or handling of goods that have moved or were moving in interstate commerce, as those terms are defined in the FLSA.

2.   The Court has supplemental and original jurisdiction over the State Law claims alleged herein pursuant to 28 U.S.C. § 1367(a) and the Class Action Fairness Act of 2005, 28 USCS § 1332 ("CAFA"). Supplemental jurisdiction is properly exercised over such state law claims which present many overlapping and identical issues of law and fact as the FLSA claims.  CAFA jurisdiction is properly exercised over such state law claims as the value of those claims are believed to exceed $5,000,000 on behalf of the alleged class and the citizenship of the parties meets the diversity requirements of CAFA and the other conditions for this Court to assert jurisdiction under CAFA over such claims are present.

3.   Venue is properly placed in this Court as the uncompensated labor performed by plaintiffs ANITA SANHUEZA and WENDY GUZMAN for defendants and that is at issue was performed within the State of Nevada and this district and defendants do or have done business in this district.

**PARTIES**

4.   Plaintiff, ANITA SANHUEZA (one of the "Plaintiffs"), resides in Clark County, Nevada.

5.   Plaintiff, WENDY GUZMAN (one of the "Plaintiffs"), resides in Clark County, Nevada.

6.   Defendant LINCOLN TECHNICAL INSTITUTE, INC. (hereinafter

2

"one of the corporate defendants" or "defendant") is a corporation formed and existing pursuant to the laws of the State of New Jersey and does business as Euphoria Institute of Beauty Arts and Sciences.

7.   Defendant EUPHORIA ACQUISITION, LLC (hereinafter " one of the corporate defendants" or "defendant"), is a limited liability company formed and existing pursuant to the laws of the State of Delaware and does business as Euphoria Institute of Beauty Arts and Sciences.

8.   Defendant NEW ENGLAND INSTITUTE OF TECHNOLOGY AT PALM BEACH, INC. (hereinafter " one of the corporate defendants" or "defendant"), is a corporation formed and existing pursuant to the laws of the State of Florida and does business as Euphoria Institute of Beauty Arts and Sciences.

9.   Defendants conducted the activities alleged herein and that give rise the claims made in this complaint in the states of Nevada, Florida, and Rhode Island.

10.  Defendant SHAUN E. McALMONT (one of the "Individual Defendants") is an owner and/or officer and/or director of the Euphoria Institute of Beauty Arts and Sciences through his ownership, either directly or through one or more intermediary entities that he also owns, of LINCOLN TECHNICAL INSTITUTE, INC., EUPHORIA ACQUISITION, LLC, and NEW ENGLAND INSTITUTE OF TECHNOLOGY AT PALM BEACH, INC.

11.  Defendant CESAR RIBIERO (one of the "Individual Defendants") is an owner and/or officer and/or director of the Euphoria Institute of Beauty Arts and Sciences through his ownership, either directly or through one or more intermediary entities he also owns, of LINCOLN TECHNICAL INSTITUTE, INC.,

3

EUPHORIA ACQUISITION, LLC, and NEW ENGLAND INSTITUTE OF TECHNOLOGY AT PALM BEACH, INC.

12. Defendant BRIAN K. MEYERS (one of the "Individual Defendants") is an owner and/or officer and/or director of the Euphoria Institute of Beauty Arts and Sciences through his ownership, either directly or through one or more intermediary entities he also owns, of LINCOLN TECHNICAL INSTITUTE, INC., EUPHORIA ACQUISITION, LLC, and NEW ENGLAND INSTITUTE OF TECHNOLOGY AT PALM BEACH, INC.

13. Defendants operate beauty or cosmetology schools under the names Euphoria Institute of Beauty Arts and Sciences in the States of Nevada, Florida, and Rhode Island.  The allegations set forth *infra* in this complaint involving the Euphoria Institute of Beauty Arts and Sciences and its relationship with the class members and the plaintiffs are intended to be allegations about the conduct and actions of all of the defendants.

14. Although the individual defendants maintain the corporate defendants as registered and nominally separate corporate entities, for the purposes of the claims alleged in this case, the corporate defendants should be treated as a single legally liable defendant, enterprise, general partnership, or joint venture.  Such liability and status should be found based upon the common management, control and operation of such corporate entities, all of which utilize the same internet website, interchangeable employees, and resources and which are completely interdependent and function as a single unified business operation in practice and as a matter of economic reality. Additionally, none of such entities can, or do, function as an economically viable and self-sufficient independent business and as

a result they are properly deemed as a matter of law to be mere operating offices or departments of a single legally liable defendant.

### CLASS ACTION AND REPRESENTATIVE ALLEGATIONS

15. The named Plaintiffs bring this action on their own behalf, and on behalf of the class of all persons similarly situated and on behalf of the general public.

16. The class consists of all persons who were, as alleged herein, wholly uncompensated employees of the Defendants in their profit making personal services businesses under the FLSA, such class claims being brought pursuant to 29 U.S.C. § 216(b) which authorizes lawsuits on behalf of others similarly situated, such lawsuits often referred to as "collective" and not "class" actions. Some or all of such persons who are alleged to be similarly situated and members of the FLSA class are also entitled to relief under the laws of the States of Nevada, Florida and Rhode Island (the "state claims"), as alleged herein.  It is asserted that the state claims are properly subject to class action treatment under FRCP Rule 23 for the reasons alleged herein.

17. The class claims asserted in paragraph 16 encompass under the FLSA the time period from three years prior to the commencement of this action through the date of any judgment, such claims encompassing for state law purposes the statute of limitations applicable to such state law as determined by the date of the commencement of this action through date of any judgment.

18. The class of persons identified in paragraph 16 is in excess of 500 and is so numerous that the joinder of each member of the class is impracticable.

19.  There is a well-defined community of interest in the questions of law and fact affecting the class the named plaintiffs propose to represent.  The class members' claims against Defendants involve questions of common or general interest, in that their claims are based on Defendants' failure to pay any wages whatsoever to such persons despite the FLSA's requirement, as alleged herein, that such persons be paid at least the minimum hourly wage provided for in 29 U.S.C. § 206, such conduct also violating the legal obligations imposed upon the defendant under the various state laws alleged herein.  These questions are such that proof of a state of facts common to the members of the class will entitle each member of the class to the relief requested in this Complaint.

20.  The named plaintiffs will fairly and adequately represent the interests of the class, because the named plaintiffs are members of the class and the claims of the named plaintiffs are typical of the claims of those in the class.  The named plaintiffs have retained experienced counsel competent to represent the class, the adjudication of the putative FRCP Rule 23 class claims on a class action basis is superior to other means of adjudication of such claims and/or is desirable based upon the common actions of the defendants towards the class and/or the risk of inconsistent adjudications and uncertainty regarding the proper standard of conduct by the defendants if such claims were subject to multiple individual litigations and/or the other criteria of FRCP Rule 23 are met warranting the class action certification of such claims.

**RELEVANT FACTS OF THE DEFENDANTS' BUSINESS OPERATIONS AND THE PARTIES' RELATIONSHIP**

21.  The corporate defendants are for-profit businesses,

1  meaning they are not registered with, or recognized by, any State or

2  the United States as non-profit or charitable enterprises.

3      22.  The corporate defendants are for-profit businesses,

4  meaning they are required by law to file tax information reports or

5  tax returns with the United States Internal Revenue Service and on

6  none of those filings is it indicated that they are a charity or

7  non-profit business within the meaning of the statutes and

8  regulations that govern their obligation to file those reports or

9  returns.

10      23.  Defendants conduct for-profit business activities in

11  Nevada, Florida, and Rhode Island, by providing educational services

12  (the "educational services business") to paying students in fields

13  of cosmetology and esthetics, which includes training students to

14  practice, as regulated by various state laws, the trades of

15  cosmetology and esthetics or skin care.

16      24.  Defendants' for-profit business activities in Nevada,

17  Florida, and Rhode Island also includes the providing of personal

18  services, for a fee, to members of the public (the "personal

19  services business") who in exchange for paying such a fee receive

20  cosmetology and/or esthetics services.

21      25.  Defendants' for-profit personal services business

22  activities are designed to generate a profit for defendants and do

23  generate a profit for the defendants and the revenue defendants

24  receive from the fees defendants charge to the public for the

25  personal services provided by such business exceed the value of the

26  materials, if any, that such members of the public consume during

27  the receipt of such services.

28      26.  Defendants utilize the labor of the class members, who

7

have also purchased the educational services provided by defendants
in their educational services business, in Defendants' personal
services business.

27. The class members are paid no compensation by the
defendants for the labor they provide in Defendants' personal
services business, meaning they receive no payments in United States
currency or in instruments that are convertible as a matter of law
into such currency in exchange for furnishing such labor.

28. The labor provided by the class members in Defendants'
personal services business was and is essential to that business, in
that the labor needed to provide the personal services to the
members of the public, for which such members of the public paid a
fee to defendants, was furnished exclusively or predominately by the
class members.

29. Without the labor provided by the class members,
Defendants' personal services business would either cease to operate
or would have to secure labor from other persons who would have to
be compensated at a minimum hourly wage as required by the FLSA and
such state laws.

30. Defendants actively promote and advertise their personal
services business to the public and induce the purchase of those
services by offering them to members of the public at a cost lower
than the cost typically charged by other business that provide such
services and do not utilize uncompensated labor to provide such
services.

31. Defendant's for-profit personal services business
competes with other profit making businesses that provide the same
personal services that it provides to the members of the public, in

that members of the public have available to them other providers of such personal services besides Defendant who, for a fee, will provide such personal services.

32. Defendant is able to advantageously compete with other profit making businesses that provide the same personal services that it provides to the members of the public by charging members of the public lower fees for such services than those charged by its competitors.

33. Defendants' ability to provide the same personal services to members of the public as are provided by its competitors, and earn a profit by doing so despite charging less for those services than its competitors, is either substantially or entirely the result of Defendants enjoying lower operating costs in its personal services business because they provide such services to the public using the class members' unpaid labor while their competitors must pay at least the minimum hourly wage required by the FLSA or state law to their employees who provide the same labor and services to the public.

34. Defendant could have the class members provide personal services to the public without charge, or only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services.

35. The defendants have made a conscious decision to not have the class members provide personal services to the public without charge, or only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services.

36. The defendants have made a conscious decision to not have the class members provide personal services to the public without

charge, or only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services, and have made that decision so Defendants can operate a profit making personal services business that competes with other enterprises that also provide such personal services and are not in the educational services business.

37. While the class members' labor in Defendants' personal services business benefits them in securing experience providing such personal services and in achieving their ultimate goal of being licensed to practice their desired occupation, defendants' decision to operate Defendants' personal services business as a profit making venture is irrelevant to the class members' education and occupational goals. This is because the class members would enjoy the exact same benefit if Defendants did not charge members of the public any fee for such personal services, or if they only charged a fee sufficient to cover the actual cost of the materials, if any, consumed by such members of the public while receiving such personal services.

38. Defendants' educational services business neither requires nor benefits from the defendants' decision to charge members of the public for providing personal services and to carry on a profit making personal services business utilizing the unpaid labor of the class members.

39. The defendants' carrying on of a for profit personal services business, utilizing the unpaid labor of the class members, has the effect of depressing wages and employment opportunities generally among workers who would otherwise provide those personal services. That depression of wages and employment opportunities

arises because defendants are paying nothing whatsoever for the class members' labor used to provide such services, which in turn results in defendants being able to conduct a profit making personal services business that charges members of the public less than its competitors must charge, such competitors paying at least the minimum hourly wage required by the FLSA and state law to their employees.  Such ability of the defendants to secure labor for their profit making personal services business, without paying at least the minimum hourly wage required by the FLSA and state law for that labor, results in other businesses who provide the same personal services and that do pay such minimum hourly wages being unable to increase the wages of their workers above that minimum hourly amount or hire more workers to provide such services.  Such other businesses are unable to do those things as a direct and proximate result of Defendants' utilization of the class members' unpaid labor and Defendants' ability, as a result of such utilization, to sell such personal services to the public for an amount less than such other businesses could charge and still make a profit.

40.  The amount of hours of unpaid labor that the class members performed in Defendants' personal services business is known to the defendants who kept detailed contemporaneous records of those hours of work and in respect to each of the named plaintiffs such hours of work were in excess of 500 hours.

**HOW THE RELEVANT FACTS ESTABLISH AN EMPLOYMENT RELATIONSHIP FOR THE PURPOSES OF THE FLSA AND STATE LAW**

41.  The relationship between defendants and the putative class members, in respect to the labor provided by the putative class members in defendants' personal services business, is one of

11

1    employer and employee for the purposes of the FLSA and state law.

2    That employment relationship exists for the following reasons:

3              (a) The class members provided labor in Defendants'

4              personal services business that was immediately

5              advantageous to defendants and the profitability of such

6              business was substantially or wholly dependent upon such

7              labor;

8              (b) The class members, while receiving a benefit from

9              their labor in Defendants' personal services business in

10             the form of experience that assisted them in achieving

11             their occupational goals, were simultaneously conferring a

12             valuable economic benefit upon the defendants, which were

13             charging the public for the services of the class members

14             and profiting from such charges;

15             (c) The class members' labor in Defendants' personal

16             services business displaced or made unnecessary the

17             employment of the persons Defendant would have otherwise

18             had to employ, and pay wages to, for the performance of

19             the labor that the class members furnished and from which

20             the defendants profited;

21             (d) Certain of the class members' labor did not and could

22             not confer any educational or occupational benefit

23             whatsoever upon such class members, in that the class

24             members, or some of them, were required by defendants to

25             spend time not actually performing personal services on

26             customers but performing manual labor or administrative

27             functions including, but not limited to, janitorial,

28             clerical or logistical functions, that were essential and

necessary for the conducting of Defendants' personal

services business but which had no educational purpose or

benefit to the class members and for which time

expenditures defendants failed and refused to pay the

class members any wages whatsoever; and

(e) For the reasons stated in paragraph 39, as

Defendants' utilization of the unpaid labor of the class

members in a commercial, for-profit, personal services

business depresses the wages of employees in that industry

and lessens the employment opportunities in that industry.

**HOW THE RELEVANT FACTS RENDER THE
DEFENDANTS OTHER THAN THE CORPORATE
DEFENDANTS LEGALLY RESPONSIBLE
FOR THE PLAINTIFFS' CLAIMS**

42.  The defendants McAlmont, Ribiero, and Meyers, by virtue of their ownership and/or control of the Euphoria Institute of Beauty Arts and Sciences, were empowered to make, and did make, the decisions to have the Euphoria Institute of Beauty Arts and Sciences institute and/or continue the defendants' practices that are alleged to have created an employer and employee relationship between Euphoria Institute of Beauty Arts and Sciences and the plaintiffs and the class members for the purposes of the FLSA and state minimum wage laws that are alleged in this complaint, such actions by McAlmont, Ribiero, and Meyers also causing the violations of the FLSA and state law alleged in this complaint.

43.  The defendants McAlmont, Ribiero, and Meyers, by virtue of their ownership and/or control of the Euphoria Institute of Beauty Arts and Sciences Business could have, but did not, make the decision to have the Euphoria Institute of Beauty Arts and Sciences

discontinue the defendants' practices that are alleged to have created an employer and employee relationship between the Euphoria Institute of Beauty Arts and Sciences and the plaintiffs and the class members for the purposes of the FLSA and the state minimum wage laws that are alleged in this complaint, such actions by McAlmont, Ribiero, and Meyers also causing the violations of the FLSA and state law alleged in this complaint.

44. The defendants McAlmont, Ribiero, and Meyers, despite having the power to do so, did not direct the Euphoria Institute of Beauty Arts and Sciences to discontinue the practices that are alleged to have created an employer and employee relationship between the Euphoria Institute of Beauty Arts and Sciences and the plaintiffs and the class members for the purposes of the FLSA and the state minimum wage laws that are alleged in this complaint, such actions by McAlmont, Ribiero, and Meyers also causing the violations of the FLSA and state law alleged in this complaint.  The defendants McAlmont, Ribiero, and Meyers failed to take such action because doing so would have diminished the profits of the Euphoria Institute of Beauty Arts and Sciences and such diminishment of profits would have in turn diminished the financial returns enjoyed by defendants McAlmont, Ribiero, and Meyers from their ownership or control of the Euphoria Institute of Beauty Arts and Sciences.

45. The defendants McAlmont, Ribiero, and Meyers became aware, at least three years prior to the commencement of this action, that the personal services business of the Euphoria Institute of Beauty Arts and Sciences was an important and profitable business activity of the Euphoria Institute of Beauty Arts and Sciences.

46. The defendants McAlmont, Ribiero, and Meyers became aware,

14

at least three years prior to the commencement of this action, that the personal services business of the Euphoria Institute of Beauty Arts and Sciences relied upon the unpaid labor of the class members.

47. The defendants McAlmont, Ribiero, and Meyers, after they became aware that the personal services business of the Euphoria Institute of Beauty Arts and Sciences relied upon the unpaid labor of the class members, made no attempt to ascertain whether the Euphoria Institute of Beauty Arts and Sciences's use in its personal services business of the unpaid labor of the class members was in compliance with the FLSA or the state minimum wage laws in the states where the Euphoria Institute of Beauty Arts and Sciences operated.

48. The defendants McAlmont, Ribiero, and Meyers, after they became aware that the personal services business of the Euphoria Institute of Beauty Arts and Sciences relied upon the unpaid labor of the class members, and prior to the occurrence of the injuries sustained by the plaintiffs and the class members, were made aware that the use of unpaid student labor by a private for profit cosmetology school in a profit making personal services business might violate the FLSA.  The defendants McAlmont, Ribiero, and Meyers, despite that knowledge, made no attempt to change the Euphoria Institute of Beauty Arts and Sciences's practice of using uncompensated student labor in a profit making personal services business.

49. The defendants McAlmont, Ribiero, and Meyers, after they became aware that the personal services business of the Euphoria Institute of Beauty Arts and Sciences relied upon the unpaid labor of the class members, and prior to the occurrence of the injuries

sustained by the plaintiffs and the class members, were made aware that the use of unpaid student labor by a private for profit cosmetology school in a profit making personal services business either did violate the FLSA or had been found by at least one court to violate the FLSA.  The defendants McAlmont, Ribiero, and Meyers, despite that knowledge, made no attempt to change the Euphoria Institute of Beauty Arts and Sciences's practice of using uncompensated student labor in a profit making personal services business.

50. In light of the foregoing set of facts, the defendants McAlmont, Ribiero, and Meyers are properly deemed "employers" of the plaintiffs and the class members within the meaning of the FLSA and the state laws alleged in that defendants McAlmont, Ribiero, and Meyers were acting as decision making "agents of an employer" and were the controlling persons of the Euphoria Institute of Beauty Arts and Sciences Business and the beneficial owners of the Euphoria Institute of Beauty Arts and Sciences with the power to implement, continue and/or terminate the illegal policies and practices that are alleged to have violated the FLSA and the state laws that are alleged in this complaint.  The defendants McAlmont, Ribiero, and Meyers not only were vested with such powers, but also knowingly exercised such powers to continue the violations of the FLSA and the state laws that are alleged in this complaint and/or they acquiesced to the continuation of such violations despite having the power and duty to prevent and stop the same.  The imposition of such liability upon the defendants McAlmont, Ribiero, and Meyers is also proper because they expressly directed the Corporate Defendants to commit the criminal acts that violated the FLSA and the state laws alleged

1  and as a result should be held civilly liable for such violations of

2  law.

3                    **FIRST CLAIM FOR RELIEF UNDER**
                     **THE FAIR LABOR STANDARDS ACT**

4

5        51.  Plaintiffs hereby incorporate each and every

6  allegation contained in this Complaint above and realleges said

7  allegations as though fully set forth herein.

8        52.  Pursuant to the applicable provisions of the FLSA, 29

9  U.S.C. § 206 and § 207, the named plaintiffs and those similarly

10  situated were entitled to at least the minimum hourly wage, which is

11  currently $7.25 an hour, for each hour that they labored in

12  defendants' personal services business and in the event they worked

13  more than 40 hours a week an overtime hourly wage of time and one-

14  half such minimum hourly wage for all hours worked in excess of 40

15  hours per week.

16        53.  The named plaintiffs and those similarly situated

17  were paid no monetary compensation whatsoever by the defendants for

18  performing labor for the defendants as employees in the defendants'

19  personal services business, such failure to pay the plaintiffs and

20  the class members any compensation whatsoever violating the minimum

21  hourly wage requirements of 29 U.S.C. § 206 and, in the event any of

22  the class members or plaintiffs ever worked in excess of 40 hours in

23  a week, the overtime pay requirements of 29 U.S.C. § 207.

24        54. Defendants' aforesaid violations of the FLSA were willful

25  in that defendants were aware they were running a for profit

26  personal services business and were treating the class members like

27  employees and defendants also were aware that employees of profit

28  making personal services businesses are covered by the minimum

hourly wage requirements of the FLSA.

55. The named plaintiffs on behalf of themselves and all other similarly situated persons who consent in writing to join this action, it also being proposed that all such persons be notified of this action through the dispatch of a written notice to the last known names and addresses of such persons that are set forth in the defendants' records or that can otherwise be ascertained, seek, on this First Claim for Relief, a judgment for unpaid minimum wages and overtime wages and additional liquidated damages of 100% of any such unpaid wages, such sums to be determined based upon an accounting of the hours worked by the named plaintiffs and any such other persons who consent to join this action, and the plaintiffs also seek an award of attorney's fees, interest and costs as provided for by the FLSA.

**SECOND CLAIM FOR RELIEF UNDER
STATE LAW REQUIRING A MINIMUM HOURLY WAGE
AND UNDER CERTAIN CIRCUMSTANCES AN OVERTIME WAGE**

56. Plaintiffs hereby incorporate each and every allegation contained in this Complaint above and reallege said allegations as though fully set forth herein.

57. The conduct alleged by the defendants also constituted a violation of the laws of the states of Nevada, Florida, and Rhode Island that require the payment of minimum hourly wages and overtime wages of one and one-half times the minimum hourly wage, and that authorize civil suits to collect the same including, but not necessarily limited to, the following:

(a) Nevada Constitution Article 15, Section 16 and N.R.S. § 608.250 (granting right to a minimum wage and authorizing civil actions to enforce that right);

1          608.018 (granting right to overtime wages);

2          (b)    Florida Constitution Article X, Section 24, providing

3                 for the payment of minimum wages; and

4          (c)    Rhode Island General Laws § 28-12-3.

5     58. Defendants' alleged conduct has deprived all of the class

6 members who worked for the defendant of the minimum wages and

7 possibly in some instances overtime wages owed to such class members

8 under Nevada or Rhode Island law.

9     59. The named plaintiffs, on behalf of themselves and the

10 plaintiff class, seeks a judgment for all minimum wages, overtime

11 wages, and liquidated damages and all other damages and monetary

12 relief authorized by Nevada, Florida, and Rhode Island law for

13 violations of minimum wage and/or overtime wage payment

14 requirements.

15     60.  The named plaintiffs, on behalf of themselves and the

16 plaintiff class, also seeks declaratory and equitable relief in the

17 form of a declaration on the illegality of defendants' practices and

18 in the form of a suitable injunction restraining defendants from

19 continuing to violate the minimum wage and overtime wage payment

20 requirements of Nevada, Florida, and Rhode Island law .

21                    **THIRD CLAIM FOR RELIEF UNDER**
                       **STATE LAW REQUIRING THE**
22              **PAYMENT OF EARNED AND UNPAID WAGES**

23     61.  Plaintiffs hereby incorporate each and every allegation

24 contained in this Complaint above and reallege said allegations as

25 though fully set forth herein.

26     62.  The conduct of the defendants, in failing to pay the

27 minimum hourly wages required by the FLSA and in certain

28 circumstances the law of the state where class members were working,

has also violated the requirements of certain state statutes that expressly require the payment of full and properly earned wages to employees, including, but not necessarily limited to, the following:

      (a)   Nevada Revised Statutes § 608.016 (requiring payment of wages for all time worked including during trial or break in periods); § 608.060 (requiring semi-monthly payment of wages); § 608.030, 608.020 (specifying immediate payment or payment within 3 days of all wages earned and unpaid by discharged or resigning employee); and

      (b)   Rhode Islands Payment of Wages Law, Rhode Island General Laws Title 28, Chapter 14, including § 28-14-19.2 and its other applicable provisions.

63. Defendants' alleged conduct has deprived all of the class members who worked for the defendants of the wages defendants were legally required to pay them pursuant to Nevada and Rhode Island laws.

64. The named plaintiffs, on behalf of themselves and the plaintiff class, seek a judgment for all wages and liquidated damages and all other damages and monetary relief authorized by Nevada and Rhode Island law as a result of defendants' failure to pay the named plaintiff and class members the wages defendant was legally required to pay them pursuant to Nevada and Rhode Island law.

65. The named plaintiffs, on behalf of themselves and the plaintiff class, also seek equitable relief, in the form of declaratory relief and a suitable injunction restraining defendants from continuing to fail to pay the wages of the class members, as

1  required by Nevada and Rhode Island law.

2  **FOURTH CLAIM FOR RELIEF UNDER**
**NEVADA STATUTE IMPOSING PENALTIES OR**
3  **CONTINUING WAGE PAYMENT OBLIGATIONS**

4     66.   Plaintiffs hereby incorporate each and every allegation

5  contained in this Complaint above and reallege said allegations as

6  though fully set forth herein.

7     67.   The conduct of the defendants, in failing to pay the

8  minimum hourly wages required by the FLSA and in certain

9  circumstances the law of the state where class members were working,

10  has also violated the requirements of certain state statutes that

11  expressly require the payment of full and properly earned wages to

12  employees, including, but not necessarily limited to, the following:

13          (a)   Nevada Revised Statutes § 608.040 (granting 30 days

14              continuing wages to employee not paid their earned

15              wages within the time limit provided by statute upon

16              conclusion of their employment); and

17          (b)   Rhode Island Payment of Wages Law, Rhode Island

18              General Laws Title 28, Chapter 14, including § 28-

19              14-19.2 and its  other applicable provisions.

20     68.   Defendants' alleged conduct, in failing to pay the class

21  members who worked for the defendant the wages defendant was legally

22  required to pay them either under state law or the FLSA has given

23  rise to a claim for monetary damages, in an amount in addition to

24  such unpaid wages, pursuant to such state's law.

25     69.   The named plaintiffs, on behalf of themselves and the

26  plaintiff class, seeks a judgment for all damages and monetary

27  relief authorized Nevada and Rhode Island law as alleged in this

28  claim for relief, the same arising as a result of defendants'

21

failure to pay the plaintiff and the class members the wages
defendant was legally required to pay them pursuant to Nevada or
Rhode Island law or the FLSA.

     NOW THEREFORE, Plaintiffs pray for relief for themselves and
all class members as follows:

     1.   Judgment against defendants for unpaid minimum wages and
overtime wages and additional liquidated damages of 100% of any
unpaid minimum wages and overtime wages pursuant to the FLSA along
with an award of costs and attorney's fees;

     2.   Judgment against defendants for unpaid minimum wages and
overtime wages as required by the applicable state law;

     3.   Judgment against defendants for continuing wages and
statutory penalties and damages as required by the applicable state
law;

     4. Equitable, declaratory and injunctive relief including
restitution and restraint of defendants' actions in the future under
the applicable state law;

     5. Costs, litigation expenses and disbursements, interest and
reasonable attorney's fees; and

6. Such further relief the court deems just and reasonable.


Plaintiffs also demand a trial by jury on all claims subject to a trial by jury.

Dated this 10th day of December, 2013

                              Leon Greenberg Professional Corporation


                              */s/ Leon Greenberg*
                        By: _____
                              Leon Greenberg, SB# 226253
                              2965 South Jones Boulevard E-4
                              Las Vegas, NV 89146
                              (702) 383-6085
                              leongreenberg@overtimelaw.com
                              Attorney for Plaintiff

CONSENT TO JOINDER

Wendy Guzman, by signing

below, hereby consents to join this case as a plaintiff pursuant

to 29 U.S.C. 216(b).

_____
Wendy Guzman

CONSENT TO JOINDER

Anita Sanhueza, by signing

below, hereby consents to join this case as a plaintiff pursuant

to 29 U.S.C. 216(b).

_____

Anita Sanhueza