UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WENDY GUZMAN, *et al*., | Case No. 2:13-cv-02251-RFB-VCF |
| Plaintiffs, | |
| v. | **ORDER** |
| LINCOLN TECHNICAL INSTITUTE, *et al*., | |
| Defendants. | |

## I.    INTRODUCTION

This case is before the Court on the parties' cross motions for summary judgment. ECF Nos. 105, 120. Plaintiffs are former students in the Euphoria Institute of Beauty Arts and Sciences. By agreement of the parties, discovery in this case has been bifurcated. At this stage of the case, the determination the Court must make is whether Plaintiffs are "employees" of Defendants under the Fair Labor Standards Act (FLSA) and Nevada law. The Court initially granted Plaintiffs' Motion for Partial Summary Judgment (ECF No. 120) and denied Defendant's Motion (ECF No. 105) after oral argument and intend to issue a written order to follow. However, upon being alerted to a similar Nevada case regarding the FLSA and Nevada law, the Court delayed issuing its written order to allow that case to be fully decided.  See Benjamin v. B & H Educ., Inc., 877 F.3d 1139 (9th Cir. 2017).  The Court now incorporates and applies the analysis in Benjamin to this case. The Court finds the holding in Benjamin to be controlling in this case.  Thus, the Court, relying upon Benjamin, now reverses its ruling and grants Defendants' Motion and denies Plaintiffs' Motion.

## II.    BACKGROUND

### A.  Procedural History

On December 10, 2013, Plaintiffs filed suit on behalf of themselves and all others similarly situated, seeking relief under the FLSA and under various Nevada statutes requiring minimum wages, overtime pay, and timely payment of wages. ECF No. 1. The operative complaint in this case is the Second Amended Complaint ("SAC"), filed on March 20, 2014. ECF No. 35. On April 28, the parties stipulated to the correction of paragraph numbering errors in the Second Amended Complaint. ECF No. 48.

Defendants filed a Motion to Dismiss the SAC on April 3, 2014. ECF No. 37.

The Court held a hearing on April 16, 2015 regarding Defendant's Motion to Dismiss and granted in part and denied in part the motion.

On September 11, 2015 Defendants filed a Motion for Summary Judgment. ECF No. 105. On September 14, 2015 Plaintiffs filed a Motion for Summary Judgment (ECF No. 111) and later filed a Motion for Partial Summary Judgment on November 8, 2015 (ECF No. 120). On March 24, 2016 the Court held a hearing regarding a number of motions, including the parties' motions for summary judgment. ECF No. 133. The Court denied Plaintiffs' first Motion for Summary Judgment (ECF No. 111) in light of the later Motion (ECF No. 120). The Court took the parties' motions for summary judgment (ECF Nos. 105, 120) under submission.

### B.  Undisputed Facts

Based on its review of the evidence on file, the Court finds the following undisputed facts.

#### 1.  *Nevada's Requirements for Cosmetology and Aesthetician Licenses*

To obtain a cosmetology license in Nevada, students must complete 1800 clock hours in a licensed school of cosmetology, pass a state cosmetology licensing examination, and pay a licensing fee. N.R.S. 644.200(5)(a). The Nevada cosmetology examination consists of practical demonstrations and written and oral tests evaluating students on a variety of skills and procedures, including haircutting, hair styling, nail technology, chemical treatments, the use of mechanical

tools, "[i]nfection control and safety," and "antisepsis, sterilization and sanitation." N.A.C. 644.051; N.R.S. 644.240.

To obtain a Nevada aesthetician license, students must complete 900 clock hours—"which includes theory, modeling and practice"—at a licensed cosmetology school, pass the state aesthetician licensing examination, and pay a licensing fee. N.R.S. 644.207(5). The Nevada aesthetician examination consists of practical demonstrations and written and oral tests evaluating students on a variety of skills and procedures, including facial massages, the application of makeup and other cosmetics, the use of mechanical tools, "[i]nfection control and safety," and "antisepsis, sterilization and sanitation." N.A.C. 644.0508; N.R.S. 644.247.

### 2. The Euphoria Institute

Plaintiffs Wendy Guzman and Danielle Johnson are former aesthetics and cosmetology students, respectively, at the Green Valley campus of Euphoria Institute of Beauty Arts and Sciences ("Euphoria Institute"), located in Henderson, Nevada. Plaintiffs enrolled at the Euphoria Institute to obtain the state-required training and instructional hours necessary to become a licensed aesthetician or cosmetologist.

The Euphoria Institute is licensed by the Nevada State Board of Cosmetology, is accredited by the Accrediting Council for Independent Colleges and Schools ("ACICS"), and is approved by the U.S. Department of Education for various federal grant and loan programs.

Euphoria Acquisition, LLC ("Euphoria"), is a profit making institution ("proprietary institution of higher education") eligible to participate in federal student aid programs under Title IV of the Higher Education Act of 1965.

Euphoria's cosmetology program includes nine different courses requiring approximately 49 weeks to complete on the School's daytime schedule and 98 weeks to complete on the evening schedule. Euphoria's aesthetics program includes three different courses requiring approximately 22 weeks to complete on the School's daytime schedule and 44 weeks to complete on the evening schedule.

The schedules for all of these programs are designed to provide sufficient education and training hours to obtain the respective license and be prepared for the qualifying exams.

### 3.  The Euphoria Salon/Clinic

Euphoria requires students to have a specific number of classroom and "lab hours" per course.  Euphoria operates a space it calls the "Clinic" – an area designed to mirror a modern salon (the Court will refer to the Euphoria clinic as the "Salon"). Students at Euphoria receive credit for all time spent in the classroom and Salon as part of the Euphoria curriculum toward their total clock-hour graduation requirement. Once a student completes the first phase of their program at Euphoria, consisting solely of classroom instructional hours, he or she rotates between classroom instruction and clinical experience in the Salon for the remainder of their schooling. The Salon provided students with the opportunity to receive "lab" hours towards their graduation requirement by providing salon services to the public, including hair cutting and styling, hair texturing, hair coloring, hand and scalp treatments, and manicures and pedicures.

### a.  Advertising, Pricing, and Revenue

Euphoria advertised the Salon's services to the public by displaying a "Salon Services" menu on its website. The Salon is open to the public on a walk-in basis or by appointment. The Salon prices its services at a minimum of 50% less than what it believes is the cost charged by regular salons. The Salon generates revenue from the sales of products and services to members of the public. The Salon generated approximately $1.02 million in revenue from 2010 through 2013.  Services delivered to clients at the Salon typically take longer than the same services would if they were performed at a commercial salon.  The Court does not find that the revenue from the Salon is an essential part of Euphoria's business model.

During her time as a student at Euphoria, Plaintiff Johnson performed 116 services on paying members of the public in the Clinic. This generated total revenue of $1,738.50 and she sold two products, totaling $36.30. Plaintiff Guzman performed 25 services on paying members of the public while in the Clinic, which yielded $421.00 in total revenue and she sold no products.

### b.  Student Assignments and Duties

At the Salon, Plaintiffs and the other students provided cosmetology and aesthetics services to members of the public.  Euphoria assigned incoming clients to students "on the basis of rotation." This means that incoming clients were assigned to the first available student unless the

client requested a particular student. Once a student finished performing a service on a client, the student was put back into the student rotation. Students were not assigned to clients by matching the client's requested service with a student that needs more experience providing that service. Euphoria students must perform all services requested by paying clients to which they are assigned in the Salon. Refusing a service could result in a loss of clock hours and the student being sent home.

Euphoria students got the most benefit from working with clients ("live models") in the Salon. However, there were not always live models available for the students to work on. Plaintiffs were not permitted to bring volunteer models. Plaintiffs spent between 50% and 70% of their assigned Salon clock hours working on live models.

As for the remaining 30% to 50% of their clock hours, Plaintiffs spent half of this time practicing on mannequins or studying and the other half practicing services on other students. However, Euphoria only allowed students to receive one free non-chemical service per month. Students must pay half the normal Salon price for all other services they receive, and cannot receive them during their clock hours.

Plaintiffs and the other students also spent some of their assigned clock hours working in other areas of the Salon, such as sanitation, reception, or the stockroom (which Euphoria called "dispensary"). Sanitation and dispensary are areas tested on the Nevada state licensure exam. Plaintiffs' sanitation duties also included sweeping and mopping the floors, washing and folding laundry, and taking out the trash. At the end of each day, the Salon was also cleaned by an outside cleaning service.

The Salon's busiest day of the week is Saturday. Euphoria restricted the number of permissible student absences on Saturdays for students assigned to work in the Salon that day.

For all of the hours that the Plaintiffs performed services in the salon, the Plaintiffs received credit hours towards their total hours of training required for licensure. A training completion worksheet for each Plaintiff was presented to them and this worksheet certified for the respective Plaintiff the hours she had trained in the salon so these hours could be counted as part of their required hours of training for their licenses.

### c. Role of Instructors

Instructors evaluated students by observing them as they performed services on members of the public, checking the quality of the service after completion and demonstrating to the student what may have been missed.

When cosmetology students performed services in the Salon, an instructor first engaged in a conversation with the client and student about the service that was to be performed. The instructor was available for questions from students throughout the process. The instructor also consulted with the client after the service to make sure everything was done correctly.

When aesthetics students performed services in the Salon, students would be the one to greet the client and allow them to get situated in a private room. The student then performed the service (with or without the presence of the instructor), and the instructor returned to sign off on the service.

However, the amount of time Euphoria instructors spent working with the plaintiffs on each customer service varied but lasted on average five minutes per customer. The instructors were available as needed by the students. The Plaintiffs did not find that they needed the instructors for most of the clients for whom they performed services. Euphoria did not evaluate its instructors based on the revenue or volume of customers generated by the Salon. Euphoria did not employ non-teaching cosmetologists or aestheticians, nor did it provide professional cosmetology students to the public performed by non-Euphoria students.

### d. Evaluation/Compensation

Euphoria did not incentivize students based on the numbers of services they performed on members of the public, nor did that affect their grades. Euphoria encouraged, but did not incentivize Plaintiffs to sell products to paying members of the public. Grades were not affected by the number of products students sold. Students receive no credit from Euphoria (such as a sales commission) for making product sales. Euphoria did not require or incentivize students to bring guests to the clinic to receive services. For example, Euphoria did not offer a discount to family members or friends of students.

### III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

"When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Id. at 1102-03. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

## IV.  DISCUSSION

### A.  Students/Employees Under the FLSA or Nevada Law

#### 1.  *Legal Standard Under the FLSA*

The FLSA mandates that every employer pay a minimum wage "to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The FLSA defines "employer" to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" 29 U.S.C. § 203(d). "[T]he definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009). "Employee" is defined under the FLSA, with certain exceptions, as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" is defined as including "to suffer or permit to work." 29 U.S.C. § 203(g). "The definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages." Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947). Nevertheless, the FLSA "define[s] the verb 'employ' expansively," thereby "stretch[ing] the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992).

In the determining whether students involved in vocational training are considered employees or students under the FLSA, this Circuit has explained that "the primary beneficiary test best captures the Supreme Court's economic realities test in the student/employee context." Benjamin, 877 F.3d at 1147.  The Ninth Circuit in Benjamin found that the "primary beneficiary" analysis involves a review of seven nonexhaustive factors:

> "1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.

2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.
3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.
4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.
5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.
6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.
7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship."

Id. at 1146 (quoting Glatt v. Fox Searchlight Pictures, Inc., by 811 F.3d 528, 536-37) (2d Cir. 2016).

### 2. *Legal Standard Under Nevada Law*

The Nevada Supreme Court has recently emphasized that Nevada's law and federal law regarding who may be considered an employee "should be harmonious in terms of which workers qualify as employees." Terry v. Sapphire Gentlemen's Club, 336 P.3d 951, 958 (Nev. 2014). Relying upon this conclusion derived from its analysis of state legislative intent, the Nevada Supreme Court adopted in Terry the "economic realities" test for determining employment under Nevada law. Id. As the "primary beneficiary" test adopted by the Ninth Circuit in Benjamin is a variation on the economic realities test applied to the student/employee context, the Court finds that the primary beneficiary test in Benjamin would also be the appropriate test under Nevada law.

### B. Plaintiffs Were Not Employees of Euphoria under Federal or State Law

The Court finds that the undisputed facts in this case are consistent with those in Benjamin and that Benjamin is therefore controlling in this case. Id. at 1146-48. A review of the seven factors outlined in Benjamin as applied to this case support this conclusion.

First, it is undisputed that the Plaintiffs in this case and other students (purported members of the class) had no expectation of compensation and were not promised compensation. Second, it is also undisputed that the direct services training in the salon was exactly the type of direct services that the Plaintiffs were required to obtain for their cosmetology licenses. Third, the salon

hours or training—which is the only activity that could conceivable be construed as work by an employee—was counted toward the credit hour requirement necessary for licensure. The Plaintiffs do not dispute that the hours they "worked" in the salon were credited toward their mandated training hour requirement for licensure.

Fourth, the Court finds that the salon work, including the cleaning aspects of the work, was integrated into the overall academic program and calendar. The salon work occurred in the second phase of the students training. Additionally, when there were no customers in the salon for training, students would remain on site to study or participate in other training activities.

Fifth, the students did not perform tasks for the salon which were not part of the topics they were required to master for their licenses and they received full credit for all of the hours they worked in the salon. While the Court does find that Euphoria operated the salon in a manner that maximized its ability to pay for itself, given the ruling in Benjamin, the Court does not find that such operation did not also offer "beneficial learning." 877 F.3d at 1146. While it would have been ideal to have had more instructor supervision of each student performing services in the salon, the Court cannot say that the hours in the salon did not offer "significant educational benefits" to the students. Id. The Plaintiffs themselves believed that they benefitted educationally from their many hours in the salon.

Sixth, the Court does not find that the services performed by the students supplants the work of others. Euphoria does not employ non-teaching cosmetologists or aestheticians. While the students do engage in a variety of cleaning tasks, Euphoria still has separate employees/contractors perform regular cleaning services. Moreover, the cleaning and sanitization tasks performed by students are tasks which students would be expected to know and perform as licensed cosmetologists or aestheticians.

Seventh, it is undisputed that the Plaintiffs and other students did not expect and were not promised compensation at the end of their cosmetology and aesthetics programs.

Finally, the Court finds that the facts of this case are sufficiently similar to those in Benjamin such that the Court finds the holding in Benjamin to be applicable to this case. Id. at 1145-48. That case involved the very same question as to whether students of cosmetology schools

can be considered employees under the FLSA especially when they perform services for paying members of the public.  Id.

As the Court finds that the Plaintiffs and other students at Euphoria were not employees under the FLSA or Nevada law, all of the Plaintiffs' claims must be and are dismissed.

## V.      CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is denied. ECF No. 120.

**IT IS FURTHER ORDERED** that Defendant's Motion Summary Judgment is granted. ECF No. 105.  The Clerk of Court shall enter judgment in favor of Defendants and close this case.

DATED: September 10, 2018.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**